Egan Jr., J.
*954 Donald J. Murray (hereinafter decedent) and defendant — his nephew — practiced dentistry together for a number of years in the Village of Johnson City, Broome County. Upon decedent’s retirement in 1997, he and defendant entered into various written agreements providing for the sale and transfer of decedent’s practice to defendant, and all of the periodic payments due thereunder were to be satisfied over the course of the next seven years. In addition to these agreements, decedent allegedly financed another loan to defendant — denominated by the parties as “the Weissmann note” — in the amount of $75,000. Although defendant apparently paid a substantial portion of his obligations due under the subject agreements (albeit not always in a timely manner), some portion of the underlying debt purportedly remained due and owing as decedent’s health began to deteriorate in 2009. In an effort to resolve their business dealings prior to his then-impending death, decedent requested that defendant retire all outstanding debt related to the sale of the practice. Although decedent and defendant’s respective accountants thereafter arrived at a figure that they believed to be the sum due and owing by defendant, decedent ultimately died in October 2009 without any resolution of the matter.
Plaintiff, as the executor of decedent’s estate, thereafter commenced this breach of contract action seeking to recover “at least $24,408.68,” together with interest thereon, representing the sum allegedly due decedent at the time of his death.[1] Defendant answered and counterclaimed, contending that he was entitled to an offset of $59,139 for unremunerated dental services that he allegedly performed on decedent’s former patients — services that either were prepaid to decedent or for which defendant could not otherwise bill. Plaintiff thereafter moved for partial summary judgment on the issue of liability and/or a judgment for “at least $19,000,” together with the dismissal of defendant’s counterclaim, and defendant cross-moved to compel discovery. Supreme Court granted plaintiff partial summary judgment as to liability and partial summary judgment as to damages in the sum of $18,000, dismissed defendant’s counterclaim and denied defendant’s cross motion to compel discovery. Defendant now appeals.
*955 The “at least $19,000” sought by plaintiff on the underlying motion and the $18,000 ultimately awarded by Supreme Court appear to find their genesis in a letter sent by defendant to decedent’s son in February 2010, wherein defendant recounts the efforts undertaken to resolve the total amount of outstanding indebtedness owed by him to decedent. In that letter, defendant indicated that regardless of the sum actually due, which he believed to be “close to” $19,000, he was going to start reducing the underlying debt by $1,000 per month.[2] Supreme Court granted plaintiff partial summary judgment and, for reasons not entirely clear from the record, awarded plaintiff $18,000 in damages “without prejudice to pursue further damages” — apparently deeming the foregoing letter to be sufficient to establish defendant’s liability for, but not the precise amount of, the subject debt.
Defendant now argues that the February 2010 letter constituted a settlement proposal (see CPLR 4547) and, hence, was inadmissible for purposes of plaintiffs summary judgment motion. Assuming this argument is properly before us,[3] we find it to be lacking in merit. The letter at issue clearly acknowledges both defendant’s liability for and his corresponding intent to satisfy the underlying debt (see Alternatives Fed. Credit Union v Olbios, LLC, 14 AD3d 779, 781 [2005]), and the mere fact that the letter also contains a historical summary of previous attempts to ascertain the total amount of money due and owing under the subject agreements does not transform it into an inadmissible settlement proposal.
As for plaintiffs overall entitlement to partial summary judgment, we agree that the foregoing letter, together with the various emails contained in the record, is more than sufficient to establish defendant’s liability with respect to the agreements at *956 issue. We reach a contrary conclusion, however, with respect to the damages award fashioned by Supreme Court. In essence, Supreme Court found that plaintiff was entitled to at least $18,000 in damages and granted plaintiff partial summary judgment to that extent, leaving open the possibility that plaintiff may be able to prove additional damages and, hence, supplement that award at a future date. Where, as here, a party’s damages cannot be ascertained in total, the appropriate course of action is to deny the moving party summary judgment as to damages and conduct an inquest (see CPLR 3212 [c]). Accordingly, this matter is remitted to Supreme Court for that purpose (see generally Kolmar Ams., Inc. v Bioversel Inc., 89 AD3d 493, 494 [2011]; USHCP Real Estate Dev., Inc. v Mitrano, 85 AD3d 1719, 1720-1721 [2011]).
As for defendant’s counterclaim, defendant asserts that after executing the asset purchase agreement in 1997, he discovered that he was responsible for providing unremunerated dental services to certain of decedent’s patients. We agree with Supreme Court that any claim in this regard accrued in 1997 — or shortly thereafter — and, hence, defendant’s counterclaim — asserted in November 2010 — was time-barred. To the extent that defendant seeks to avail himself of the doctrine of equitable recoupment (see CPLR 203 [d]), we note that, contrary to defendant’s assertion, his counterclaim does not actually arise out of the same transactions or occurrences upon which the underlying complaint is based. Specifically, despite defendant’s attempt to couch his counterclaim as a breach of certain provisions of the asset purchase agreement, it is apparent that none of the written agreements executed in connection with the transfer and sale of decedent’s dental practice contemplated — much less actually addressed — the subject matter of defendant’s counterclaim. As defendant’s counterclaim does not, in our view, stem from an alleged breach of the same documents giving rise to plaintiff’s breach of contract claims, CPLR 203 (d) cannot save his otherwise time-barred counterclaim. Defendant’s remaining contentions, to the extent not specifically addressed, are either lacking in merit or have been rendered academic.
Mercure, J.E, Kavanagh, Stein and McCarthy, JJ., concur. Ordered that the order and judgment are modified, on the law, without costs, by reversing so much thereof as awarded plaintiff damages in the amount of $18,000, together with interest thereon; matter remitted to the Supreme Court for an inquest pursuant to CPLR 3212 (c); and, as so modified, affirmed.

. This was the figure arrived at by decedent’s and defendant’s respective accountants in late 2009, but this sum did not reflect the $4,625 credit requested by defendant’s accountant.

. Counsel for decedent’s estate returned the $1,000 check that accompanied this letter, indicating that the estate lacked the financial wherewithal to accept partial payment and requesting that defendant tender “immediate payment of the balance due in full” — $19,783.68, which appears to represent the figure previously adopted by the respective accountants ($24,408.68) less the requested credit ($4,625).

. Although defendant asserted that any “so-called admissions on [his] part were not because [he] owed any money but because [he] was trying to balance a number of familial factors,” he did not expressly invoke the provisions of CPLR 4547 in opposing plaintiff’s motion for partial summary judgment. As such a claim does not involve a pure question of law (see generally KPSD Mineola, Inc. v Jahn, 57 AD3d 853, 854 [2008]), it could not be raised for the first time on appeal (see Gleeson v New York City Tr. Auth., 74 AD3d 616, 616 [2010]; Walker v Greatheart, 50 AD3d 893, 893-894 [2008]; Sealey v West End Garden Dev. Fund Co., Inc., 37 AD3d 699, 700 [2007]; Home Sav. of Am. v Favata, 244 AD2d 155, 155 [1997]).